Laramore, Judge,
delivered the opinion of the court:
This is an action for the recovery of wages plaintiff alleges are due him as a result of having been illegally separated from his rank and duty at the New York Naval Shipyard (hereinafter referred to as shipyard), Brooklyn, New York.
Plaintiff contends that his separation was improper, unwarranted, and unjustified, and that he is entitled to back pay for the period of his separation and a short preceding *27 period of leave without pay. Defendant contends that the separation was in conformance with, section 14 of the Veterans’ Preference Act of 1944,[1] was not unwarranted or unjustified under Public Law 623,[2] and, in any event, since it resulted from improper conduct of plaintiff, he is estopped from recovering.
The questions presented are these: (1) whether plaintiff’s separation was for the efficiency of the service and in compliance with other requirements of section 14 of the Veterans’ Preference Act of 1944, supra; (2) whether plaintiff was restored to his position on the grounds his separation was unjustified or unwarranted under Public Law 623, supra/ or (3) whether plaintiff is equitably estopped from recovering back pay for the period of a separation if the separation resulted from misrepresentations by plaintiff to defendant’s officers.
This is a case wherein the plaintiff is truly “hoist with his own petard.” A brief review of the facts will illustrate the point with more clarity.
On and prior to October 3, 1949, the plaintiff was in the employment of the defendant at the New York Naval Shipyard, Brooklyn, New York, in the position of a painter.
On October 3,1949, after returning from a period of leave, plaintiff reported to the shipyard dispensary, complaining of a pain in the groin, and was examined by a medical officer who found evidence of an old hernia and recommended an operation. Plaintiff was assigned from then on to duties with limited physical activity and exertion pending adjudication of his claim for occupational hernia by the United States Employees’ Compensation Commission. Sometime within the next 60 days the Compensation Commission notified plaintiff that his claim of injury contained no factual support and requested him to submit a detailed statement. The shipyard notified plaintiff that his assignement to limited duty, which had been in effect since October 3, would be terminated on December 7, 1949. On that day plaintiff again reported to the dispensary with a written request *28 from Ms supervisor that he be given a further physical examination to determine his fitness to continue duty as a painter.
The plaintiff was examined on December 7,1949, by a shipyard medical officer. The plaintiff gave to this officer a detailed history of aches and pains and physical distress. He stated that during World War I he awoke one night, after drilling the previous day, with a pain in his left foot and was placed on KP, as a light duty, for the balance of his term of service; that from 1919 to 1939 he worked as a painter but did no painting above ground level, and was unable to paint from scaffolds, etc. He stated that other painters on the job did the overhead painting. He went on to state that for the previous ten years during his employment in the shipyard, he had a pain in his foot which limited his ability to stand for any extended periods, or climb ladders, etc. He explained that he made no complaint to the medical departments of this condition but did complain to his superiors who limited his duty to no overhead work or work aboard ships. Two years previous to the examination he was given the duty of painting flags which work he stated he tolerated well. He then further stated that he suffered from hay fever which required active treatment of antihistamines from August to October each year and that he also received desensitization injections from his personal physician during four months of each year. He stated that with these treatments he did not require any medication at other times of the year. He also complained of asthma occurring at all times of the year. This condition, he said, was characterized by spells of coughing and dyspnea occurring both in daytime and night. He stated he slept only four hours a night, and that coughing and dyspnea bouts were alleviated by breathing fresh air; that such attacks were precipitated and increased on exposure to fumes (welding fumes), work in closed compartments (tanks, etc.), also on subways, buses, etc., because of closeness and bad air; that he could only do sitting-down work in well-ventilated spaces where paint fumes were at a minimum because the fumes bothered him and precipitated coughing attacks; and that standing caused severe pain in his left foot as did climbing ladders. Climbing or lifting, he stated, caused pain in the right inguinal region.
*29 The medical officer who received this history and who examined plaintiff made the following diagnosis:
Lungs: Clear. There is no wheezing * * * that would lead you to believe this man had asthma at the present time.
Left * * * marked pes cavus with mild varus deformity * * * 1" atrophy of calf muscles,' and 1" shortening left leg * * * walks with a definite limp & lacks muscle coordination on left foot.
* * * direct ing. hernia — painful to palpation. Eesid-ual of muscle dystrophy of the left leg (old polio).
The medical officer also made the following finding:
Because of this man’s inability to stand & climb, based on his own statement & physical findings I find the patient permanently unfit to continue & perform the duties of a painter as required in the New York Naval Shipyard.
He is fit for any Job requiring no climbing, no standing over 25% of time or no exposure to any type of fumes & no lifting. This job must be in a well ventilated place.
The medical officer also found that the plaintiff was fit for limited duty only, and duty which involved:
No lifting, pulling or pushing.
No climbing ladders, masts or scaffolds.
No welding or paint fumes, sand blasting.
No walking, standing over 25% of time.
No confined compartments.
Must work in well ventilated place.
The plaintiff on December 7, 1949, voluntarily signed an application for disability retirement which was processed by the shipyard on the basis of the physical examination of that date. The shipyard concurrently proceeded with administrative steps leading to the separation of plaintiff for physical disability in view of the medical finding that he was not physically qualified. Although the plaintiff’s attorney subsequently opposed the retirement action, the retirement was approved by the Civil Service Commission on February 28, 1950, and on that date plaintiff’s separation from employment was effectuated. The plaintiff appealed his separation to the Eegional Director, Second Civil Service *30 Region, and on March 14,1950, his appeal was denied. The plaintiff opposed his retirement to the Civil Service Retirement Division in Washington, but the retirement was approved. He further objected to the retirement to the Civil Service Board of Appeals and Review, and as a result on April 22,1950, was given a physical examination at a United States Marine Hospital to determine his physical fitness. The report of this examination indicated that plaintiff was physically qualified for duty as a painter, and on June 14, 1950, the Board of Appeals and Review disallowed the disability retirement. The shipyard was advised of this action and, consequently, reexamined plaintiff. Its new medical determination was that plaintiff was then physically qualified. On August 1,1950, plaintiff was restored to his position at the shipyard.
In addition to the physical examination on December 7, 1949, by a medical officer at the shipyard, the plaintiff was examined by physicians on several other occasions. On December 12, 1949, he was examined by three physicians of his own selection who found him physically fit for duty as a painter. However, plaintiff advised those doctors at the time that he felt “good” and he did not advise them of any physical difficulty in respect to the left leg or his asthma. Plaintiff was also examined on February 1,1950, at a United States Marine Hospital when he reported there for treatment of the hernia of which he had initially complained on October 3,1949. The plaintiff on reporting to the medical officer on February 1,1950, did not inform him of any alleged previous ailments but simply told him he was there for an operation. He did not make any definite complaint to the doctors but stated that approximately three months earlier while undergoing a routine physical examination a hernia was discovered on his right side. The plaintiff was given a supplemental physical examination at the United States Marine Hospital on April 22, 1950. Again, he did not advise the medical officer examining him of any alleged physical difficulty in respect to. asthma or in respect to his foot or left leg, but he advised the doctors that he felt “good.”
The procedural steps taken to effectuate plaintiff’s separation were as follows: On December 23, 1949, plaintiff re *31 ceived a notification from the Commander of the shipyard advising him that because he had been found fit for limited duty only, and a limited duty assignment was not available, his separation was proposed, and would be effected when the Civil Service Commission rendered a decision on his application for retirement. Plaintiff was advised also that he had the right to answer the notification and to request a hearing in the shipyard. On December 30,1949, the Commander of the shipyard advised plaintiff’s attorney by letter that the proposed separation was based solely on the medical findings of the shipyard medical officer and that any objection to the proposed separation would necessarily relate to plaintiff’s physical fitness. The plaintiff waived a hearing at the shipyard by letter dated January 3, 1950, and on January 23, 1950, the Commander of the shipyard sent plaintiff a final notice and advised him that his separation would become effective on receipt of the Civil Service Retirement Division’s decision. On February 28, 1950, the Civil Service Retirement Division approved 'the application for retirement which had been previously filed and on the same day the shipyard effected plaintiff’s separation from employment. On March 14, 1950, the Regional Director, Second Civil Service Region, informed the plaintiff in reply to his appeal under the Veterans’ Preference Act, supra, that since his retirement had been approved, no change in the shipyard’s separation action was called for. Plaintiff was further informed that he could appeal this decision to the Civil Service Commission within seven days. Plaintiff did not appeal his separation further but appealed his retirement to the Civil Service Board of Appeals and Review. By letter dated July 18, 1950, the Chief of the Civil Service Retirement Division stated to the shipyard that if it concurred in the finding that plaintiff was erroneously separated for disability retirement his name should be restored to the roll retroactive to the date of his retirement. On July 31, 1950, plaintiff was physically examined at the shipyard, found fit for duty, and restored to his position on August 1, 1950, for the reason he was then physically qualified.
The pertinent parts of the Act of June 10, 1948, supra, provide:
*32 Sec. 6 (a) No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service and for reasons given in writing. Any person whose removal or suspension without pay is sought shall (1) have notice of the same and of any charges preferred against him; (2) be furnished with a copy of such charges; (3) be allowed a reasonable time for filing a written answer to such charges, with affidavits; and (4) be furnished at the earliest practicable date with a written decision on such answer. No examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer or employee directing the removal or suspension without pay. Copies of the charges, the notice of hearing, the answer, the reasons for removal or suspension without pay, and the order of removal or suspension without pay shall be made a part of the records of the proper department or agency, as shall also the reasons for reduction in grade or compensation; and copies of the same shall be furnished, upon request, to the person affected and to the Civil Service Commission. This subsection shall apply to a person within the purview of section 14 of the Veterans’ Preference Act of 1944, as amended, only if he so elects.
(b) (1) Any person removed or suspended without pay under subsection (a) who, after filing a written answer to the charges as provided under such subsection or after any further appeal to proper authority after receipt of an adverse decision on the answer, is reinstated or restored to duty on the ground that such removal or suspension was unjustified or unwarranted, shall be paid compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period. A decision with respect to any appeal to proper authority under this paragraph shall be made at the earliest practicable date.
(2) Any person who is discharged, suspended, or furloughed without pay, under section 14 of the Veterans’ Preference Act of 1944, as amended, who, after answering the reasons advanced for such discharge, suspension, or furlough or after an appeal to the Civil Service Commission, as provided under such section, *33 is reinstated or restored to duty on the ground that such discharge, suspension, or furlough was unjustified or unwarranted, shall be paid compensation at the rate received on the date of such discharge, suspension, or furlough for the period for which he received no compensation with respect to the position from which he was discharged, suspended, or furloughed, less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period.
Section 14 of the Veterans’ Preference Act of 1944, supra, provides:
No permanent or indefinite preference eligible, who has completed a probationary or trial period employed in the civil service, or in any establishment, agency, bureau, administration, project, or department, herein-before referred to shall be discharged, suspended for more than thirty days, furloughed without pay, reduced in rank or compensation, or debarred for future appointment except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose discharge, suspension for more than thirty days, furlough without pay, or reduction in rank or compensation is sought shall have at least thirty days’ advance written notice (except where there is reasonable cause to believe the employee to be guilty of a crime for which a sentence of imprisonment cart be imposed), stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer, and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting, such appeal to be made in writing within a reasonable length of time after the date of receipt of notice of such adverse decision: Provided, That such preference eligible shall have the right to make a personal appearance, or an appearance through a designated representative, in accordance with such reasonable rules and regulations as may be issued by the Civil Service Commission; after investigation and consideration of the evidence submitted, the Civil Service Commission shall submit its findings and recommendations to the proper administrative officer and shall send copies of same to the appellant or to his designated representa *34 tive: Provided further, That the Civil Service Commission may declare any such preference eligible who may have been dismissed or furloughed without pay to be eligible for the provisions of section 15 hereof.
The last decision of the Civil Service Commission in respect to the separation was through the Second Region to approve the separation. The Board of Appeals and Review which issued the decision on the retirement did not recommend restoration of plaintiff. It was the Retirement Division, concerned only with retirement eligibility, which left it up to the shipyard to determine whether plaintiff was erroneously separated. The shipyard re-examined' plaintiff and found he had regained his health to a sufficient degree to pass the physical examination. The shipyard reinstated plaintiff for the reason that on July 31,- 1950, it was found that plaintiff was then physically able to perform the duties of a painter at the shipyard. The only action of the Board of Appeals and Review was to pass on plaintiff’s eligibility for retirement and to advise the shipyard accordingly. No recommendation by the Civil Service Commission respecting plaintiff’s separation was ever issued.
The separation of plaintiff was in accordance with the provisions of section 14 of the Veterans’ Preference Act of 1944, supra. Plaintiff received a written notice of proposed separation for physical disability on December 23, 1949. Plaintiff replied, and through his attorney, advised that he had decided to waive a hearing at the shipyard. The administrative decision was adverse and plaintiff was advised that his separation would be effected on approval of his retirement by the Civil Service Retirement Division. This approval was given and on February 28, 1950, plaintiff’s separation was effected. Plaintiff appealed to the Regional Director, Second Civil Service Region, the fact that he had been in a leave-without-pay status pending the separation. The Regional Director held that in view of the decision of the Civil Service Retirement Division plaintiff was totally disabled and no change should be made in the action of the shipyard in separating plaintiff. Plaintiff did not appeal this decision, but protested to the Board of Appeals and Review the approval of his retirement. As a consequence, plaintiff *35 was reexamined and on June 14, 1950, the Board held that the examination disclosed he was physically fit on that date and, therefore, the retirement was disallowed.
This court held in the case of Wittner v. United States, 110 C. Cls. 231, 234: “The language is clear. It does not prevent a discharge, if the procedure is followed, but it does forbid a discharge unless it is followed.”
The Supreme Court has held that if the procedural requirements are complied with, the Court of Claims has no jurisdiction to review the cause for removal. Eberlein v. United States, 257 U. S. 82; Keim v. United States, 177 U. S. 290. This rule was followed in the case of Love v. United States, 119 C. Cls. 486.
We believe in this case that the procedural requirements, as set out in the law, have been complied with and when these requirements are met this court is not authorized to review the decision of the United States Civil Service Commission on the merits of the action taken. Croghan v. United States, 116 C. Cls. 577.
Plaintiff’s restoration to duty was not on the ground that his separation was unjustified or unwarranted, but because his physical condition was then sufficient to enable him to perform the duties of a painter. Accordingly, plaintiff does not meet the requirements for recovery under the Act of June 10,1948, supra.
In the light of the foregoing conclusions, it is not necessary for this court to pass upon the question of equitable estoppel as urged by defendant.
Accordingly, it is the considered opinion of this court that plaintiff should not recover in this action and his petition is, therefore, dismissed.
It is so ordered.
MaddeN, Judge; Whitaker, Judge; LittletoN, Judge; and J ones, Ohief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner W. Ney Evans, and the briefs and argument of counsel, makes findings of fact as follows:
*36 1. Plaintiff was born in Italy in 1895 and attended school there (completing “the third class”) before coming to the United States in 1911. Here he attended some evening classes in English but never learned to speak, read, or understand the language in more than a limited degree. He was naturalized in 1919.
2. Plaintiff was in the United States Army for a period of three months during World War I. He was discharged for physical reasons.[1]
3. On May 3, 1937, plaintiff made application on a standard civil service form for a position as painter in the New York Naval Shipyard.[2] The form contained the following question:
14. To the best of your knowledge, do you have any of the following physical defects: Mental disease, convulsions or fits, tuberculosis, epilepsy, asthma, venereal disease, or any other defect or disability ?
The application which contained the above answers was signed and sworn to under oath by the plaintiff.
Plaintiff answered the foregoing question “No,” and answered “None” to the next question:
15. What diseases or physical defects, whether or not listed in Question 14, do you now have ?
4. On September 5, 1939, plaintiff was given a medical examination by a Navy officer, who recorded his findings on a standard civil service form. Many of the medical officer’s entries on the form were checkmarks, indicating nothing of note to record. Such a check mark followed the line reading:
Deformities, atrophies, and other abnormalities, diseases, or defects not included above.
The word “None” was entered after the line reading:
Scars of serious injury or disease.
5. Immediately after the medical examination described in the preceding finding plaintiff was employed by the shipyard as a painter. He continued in such employment with *37 out incident for 10 years, doing any work that was assigned to him, including work on ladders and staging and in tanks and other closed compartments. He was never assigned to limited duty during this period. Over a period of several months prior to October 3, 1949, plaintiff was engaged in painting flags. This work required him to climb ladders, and called for a degree of skill not possessed by all painters. Otherwise, the flag painting assignment was somewhat less arduous than many of the usual assignments in the shipyard.
6. On October 3, 1949, after returning from a period of leave, plaintiff stopped work and reported to his supervisor, in effect, that while moving from an extension ladder onto staging in the course of his employment he was forced to stretch in order to grasp the stage; that he was carrying paint, cleaning tools, and a safety belt at the time; that the effort to step from the extension ladder to the staging created a strain, and he felt a sharp pain in the groin. His supervisor sent him to the dispensary where he was examined by a Navy doctor. The medical history as given by plaintiff and the findings of the medical officer were recorded on a form provided by and for the use of the United States Employees’ Compensation Commission. The “Report on Hernia” was signed by plaintiff as “claimant.” The physician’s certificate, attached to the report, stated that the examination disclosed a right inguinal hernia; that, in the opinion of the medical officer, “this hernia is an old one with a well formed sacthat the medical officer did not know the cause of the hernia, but considered it operable; and that he recommended operation.
7. Plaintiff was assigned to duties with limited physical activity and exertion pending adjudication of his claim for occupational hernia by the Compensation Commission, Sometime within the next 60 days the Compensation Commission notified plaintiff that his claim of injury contained no factual support and requested him to submit a detailed statement. The shipyard notified plaintiff that his assignment to limited duty would be terminated on December 7, 1949. On that day plaintiff again reported to the dispensary with a written request from his supervisor that he be given a further physical examination to determine his fitness to continue duty as a painter. The request stated that plain *38 tiff had not been absent from work because of sickness during the past six months, but that he had reported a yard injury on October 3,1949; that he was given limited duty for two weeks; that the limited duty had been extended three times; and that it expired that day.
8. Plaintiff states he was under the impression that the physical examination of December Y, 1949, was related to his claim for compensation and the request of the Compensation Commission for a detailed statement. Accordingly, he gave the medical officer (not the physician who had previously examined him) quite a detailed history of aches and pains and physical distress, dating from World War I. This “history” included (1) pain in the left foot, beginning with drill in World War I, and again intermittent during the past 10 years; (2) hay fever, from late August to early October, requiring antihistamines and injections; (3) asthma (characterized by severe coughing), following hay fever and resulting from fumes of any kind, or close or bad air, as found in closed compartments (tanks) or subways or buses; and (4) pain in the groin resulting from climbing. He stated he slept only four hours a night. The medical officer summarized plaintiff’s medical history, as reported by plaintiff, as follows:
Patient states that he can only do sitting-down work in a well-ventilated space where paint fumes are at a minimum because they bother him also ppt. (sic) coughing attacks. Standing causes pain in the left foot & climbing causes pain in rt. ing. region.
9. The medical officer who recorded the foregoing history also examined plaintiff. A summary of his findings follows:
Lungs: Clear. There is no wheezing * * * that would lead you to believe this man had asthma at the present time.
Left foot * * * marked pes cavus with mild varus deformity * * * 1" atrophy of calf muscles, and 1" shortening left leg. * * * walks with a definite limp & lacks muscle coordination of left foot.
* * * direct ing. hernia — painful to palpation.
Residual of muscle dystrophy of left leg (old polio).
Under “remarks and recommendations” the medical officer wrote:
*39 Because of this man’s inability to stand & climb, based on his own statement & physical findings I find the patient permanently unfit to continue & perform the duties of a painter as required in the New York Naval Shipyard.
He is fit for any job requiring no climbing, no standing over 25% of time or no exposure to any type of fumes & no lifting. This job must be in a well ventilated place.
10. The Physical Fitness Report form which was to be filled in by the medical officer contained the following:
1. The above named employee has been examined and found to be:
* * * (b) Physically unfit to continue any employment at the Navy Yard * * *.
* * * (d) Employee fit for limited duty only which should not involve: * * *
On line 1 (b) as above indicated the medical officer who made the examination described in the previous finding placed a checkmark and inserted, after the word “employment” the words “as painter.” As checked and modified the line then read:
1. The above named employee has been examined and found to be:
(b) . . V • • Physically unfit to continue any employment as painter at the Navy Yard * * *.
The checkmark after “(b)” was then partially erased.
Another checkmark was placed after “(d)” and the form was so completed as to read:
1. The above named employee has been examined and found to be:
(d) . . V . . Employee fit for limited duty only which should not involve:
No lifting, pulling or pushing.
No climbing ladders, masts or scaffolds.
No welding or paint fumes, sand blasting.
No walking, standing over 25% of time.
No confined compartments.
Must work in well ventilated place.
Not fit as a painter.
This condition is considered: Permanent.. V .. * * *
2. Comments: Duty limited to ground level work. No climbing or lifting. No standing over 25% of time . . V . . Non-Industrial case.
*40 11. After the physical examination was made, and on the same day (December 7,1949), plaintiff was asked by officials at the shipyard to sign and he did sign a form which he states he understood to be a further step in his application for employees compensation. The form in fact was an application to the Civil Service Retirement System for retirement on account of total disability. This application was on “Standard Form 101 (Under Public Law 426) U. S. Civil Service Commission, March 1948.” Following are items contained in the form after its completion:
11. (A) When did you become totally disabled? (Month and year). 12/1949.
(B) Describe your disabilities, when and how incurred, and how they interfere with performance of the duties of your position.
Reported by Medical Officer 12-7-49 to be unfit to continue employment as painter at this Shipyard. Permanent. Must work in well ventilated place. No lifting, pulling or pushing; no climbing ladders; no climbing masts or scaffolds; no walking, standing over 25% of time; no welding fumes, sand blasting; no confined compartments.
* * * 13. (A) Have you ever received or made application for compensation under the United States Employees’ Compensation Act of September 7, 1916?
[ ] Yes [xj No
12. (a) Attached to Standard Form 101 was an instruction sheet which the “applicant will detach * * * before filing the application,” and which the applicant was advised to “read * * * carefully before filling out the * * * application.” One of the items on the instruction sheet follows:
WHO MAT RECEIVE ANNUITIES
* * * If this application is for retirement based upon total disability:
(a) The applicant must attach a certificate from his personal physician fully describing all physical signs of any existing disease or injury, with an expression of opinion as to whether or not the applicant is totally disabled for useful and efficient service and as to whether the disability is due to vicious habits, intemperance, or willful misconduct. The certificate must include the *41 date when such total disability for useful and efficient service began.
(b)The employing Department or Agency must attach a statement by the superior officer in accordance with instructions in Chapter E5 of the Federal Personnel Manual.
(b) No certificate from plaintiff’s personal physician was attached to the application. At the time plaintiff signed the application he had been examined for hernia and fitted with a truss by a physician of his own selection who was not connected with the shipyard.
(c) Plaintiff states he did not understand the purpose or import of the application he signed. He was not given a copy of the application after he signed it or of the instruction sheet. He learned a few days later from gossip among his fellow employees that he had asked for retirement.
(d) It is not established by the evidence that the medical officer who examined plaintiff and certified his total disability had been “designated by the Civil Service Commission for that purpose” within the meaning of the statute[3] authorizing retirement for disability upon the request of the employing agency and without the consent of the employee.
13. On December 12, 1949, after plaintiff learned that he was faced with possible retirement for disability, plaintiff visited three different private medical practitioners for the purpose of examination and of obtaining evidence as to his physical ability to work. Plaintiff advised these doctors at the time that he felt good and did not advise them of any alleged physical difficulty in respect to his left leg or his asthma. Each doctor found a right inguinal hernia. Each doctor stated in letters that plaintiff was physically fit to carry on his ordinary duties.
14. On December 13, 1949, plaintiff again reported to the shipyard medical officer (being the same physician who made the examination on December 7) for a re-evaluation of fitness. Plaintiff presented to the medical officer the statements he had received on the preceding day from the three physicians of his own selection. On this occasion, also, plaintiff was accompanied by his uncle, who had been, until *42 his retirement on April 30, 1949, Master Painter at the shipyard, with supervisory authority over all painters employed there. The uncle understood and spoke English with considerably more facility than did plaintiff.[4]
15. Following are the observations recorded by the medical officer as a result of the interview and examination:
Patient states that he returns today for re-examination because of misunderstandings that he believes incurred on last exam.
Patient reported for last examination for a check up on his hernia. He states that 10/3/49 he felt pain in rt. groin while he was working and reported to the dyspensary. He states that approx. 3 yrs. ago he had a light pain for 10 min. in rt. groin. This passed caused no trouble. Reported it to his Master, not to his supervisor. Because of its short duration it was not reported to the dyspensary.
At present time patient has been fitted [with] a truss and states he has no trouble or pain of any type.
* * * denies any previous serious illnesses, accidents, or operations.
* * * hay fever Aug. 28 lasts to 28 Sept. * * *
Patient states he has no deformity of his arms or legs that in any way has ever limited his activities. * * *
Patient’s uncle states patient is fully able to do all types of work required of a painter. Throughout examination today uncle has prompted patient. Patient has made no direct answers to questions asked [without] much explaining & [without] receiving o. k. from uncle.
My physical findings are the same as previous. These have not been mentioned by any outside examining physician. I have tried to treat these people as nice as possible, but they are quite dissatisfied [with] my decision & because of this a small amt. of argument was entered in. * * * With all the inconsistencies that exist between the two stories it is my opinion that the first examination which was completely unbiased should be the one followed. * * *
16. Based upon his examination of December 13,1949, the medical officer on that day made a Physical Fitness Report *43 which was identical with the report made on December 7, as set forth in the last quotation in finding 10.
17. (a) On December 15, 1949, the Industrial Delations Officer of the shipyard directed to the Medical Officer a written request for—
* * * a Medical Statement on the subject employee [plaintiff], who was declared to be permanently unfit by the Medical Officer on 12-7-49 for use in connection with his application for disability retirement * * *.
(b) On January 20, 1950, the Industrial Health Officer (not the medical officer who examined plaintiff) forwarded to the Industrial Delations Officer a summary of (1) the history which plaintiff had given to the medical officer on December 7, 1949, and (2) the physical findings and diagnosis made by the medical officer. Following is the concluding paragraph of the report:
In view of above history and physical findings, it was the opinion of the examining physician that .subject employee was not physically qualified to perform all of the duties of his rate, and it was recommended that his duty be limited to ground level work, no climbing or lifting, no standing over 25% of his working time, limitation of exposure to fumes, dusts, etc.
18. On December 19,1949, plaintiff’s attorney wrote to the Commander of the shipyard:
* * * On October 3, 1949, Mr. LaDuffa sustained a strain while working which resulted in a hernia. He has been on light duty until recently when he was examined by a yard physician who recommended that Mr. LaDuffa be discharged on grounds of disability.
In view of the fact that Mr. LaDuffa has the unbiased opinion of three impartial physicians to the effect that he is capable of performing his duties, the decision of the Yard physician seems somewhat arbitrary. * * *
Although Mr. LaDuffa has not received a notice of separation as yet, I should like to call this matter to your attention in order that an early hearing may be scheduled, inasmuch as the appellant may be discharged shortly.
Mr. LaDuffa is more than willing to be examined by a physician designated by the Civil Service Commission or by any other impartial board which you may specify. * * *
*44 * * * Your scheduling of an early hearing would be greatly appreciated.
19. On December 23,1949, the Commander of the shipyard wrote to plaintiff:
1. * * * you have been declared by the Medical Officer to be fit for limited duty only * * *.
2. * * * inasmuch as a limited duty assignment meet ing the conditions specified by the Medical Officer, is not available there is no alternative but to separate you from the service because of your disability. Your separation will become effective after the * * * Civil Service Commission has rendered a decision regarding your application for disability retirement. During this period you will be carried on sick leave or leave with pay, if accrued. If the amount of sick and annual leave to your credit is not sufficient * * * you will be carried on leave without pay.
3. You have the right to answer this notification personally and in writing and furnish affidavits in support of such answers. If you desire you will be granted an opportunity to present evidence in your own behalf, introduce the testimony of witnesses and be represented by an individual of your own choosing. If you do not request this hearing within the ten (10) day period from 26 Dec. 1949 to 6 Jan. 1950 final action will be taken to separate you from the service upon the receipt of the decision of the * * * Civil Service Commission Retirement Division * * *.
It is regretted that this action which is proposed solely because of your physical condition, is necessary.
20. On December 30,1949, the Commander of the shipyard wrote to plaintiff’s attorney:
* * * The records show that Mr. LaRuffa has made application for disability retirement annuity * * *.
On 23 December 1949, Mr. LaRuffa was given a notice of proposed separation * * *.
In accordance with the regulations, Mr. LaRuffa will be granted a hearing in the Shipyard, if he so desires.
* * * it is apparent from your letter of the 19th, that Mr. LaRuffa wishes to exercise his right to a hearing to protest the proposed separation.
* * * the proposed separation is based solely on the medical findings of the Shipyard Medical Officer. Any hearing to protest these findings would necessarily be confined to reports and evidence dealing with the physical condition of Mr. LaRuffa. Obviously, I am in no *45 position to personally make any decision concerning Mr. LaRuffa’s physical condition. Therefore, the case must necessarily be adjudicated by the Civil Service Commission if Mr. LaRuffa desires to exercise his appeal rights to that body.
In view of the foregoing * * * no useful purpose would be served by * * * a hearing at the Shipyard level. The adjudication of Mr. LaRuffa’s appeal can be expedited considerably if he waives his right to a Shipyard hearing and proceeds to appeal to the ÍDirector, Second * * * Civil Service Region, immediately after receiving a final notice. * * *
By letter dated January 3, 1950, plaintiff’s attorney advised that plaintiff had decided to waive a hearing at the shipyard.
21. On January 18, 1950, plaintiff’s attorney wrote to the Retirement Division of the Civil Service Commission:[5]
* * * the * * * Shipyard * * * is * * * processing papers to effect my client’s retirement * * * on the grounds of physical disability.
* * * we are opposed to such aplication for retirement. * * * three * * * physicians * * * have stated * * * that * * * the employee is fit for duty. * * *
It is * * * requested that your decision be made after a consideration of these statements, or * * * after another physical examination of the employee. * * *
22. On January 23, 1950, the Commander of the shipyard notified plaintiff in writing that his separation was “necessary and will be effected upon the receipt of the decision of the * * * Civil Service * * * Retirement Division * *
The notice continued:
There is enclosed herewith a statement of your right to appeal this decision to the Regional Director, * * * Civil Service Commission * * * New York * * * within 10 days from the date of this letter.[6]
23. On January 26,1950, the Regional Director of the Second Civil Service Region wrote to plaintiff:
Reference is made to your appeal to this office under the provisions of Section 14 of the Veterans’ Preference Act of 1944 from the action of the * * * Shipyard * * * *46 in separating you from your position because of alleged physical disability. * * *
* * * under the rules and regulations * * * a preference eligible employee who is suspended for more than thirty days may appeal this action to the Commission. The action of the agency in continuing you in a leave without pay status without your consent is considered to be tantamount to a suspension from duty without pay. However, since your suspension commenced on January 24, 1950, you are not entitled to appeal at this time.
* * * We * * * will proceed with a further consideration of your appeal should the agency continue your suspension for more than thirty days.
24. On February 7,1950, the Deputy Chief of the Surgical Service, United States Marine Hospital at Staten Island, New York, notified the Medical Director, Bureau of Employees’ Compensation, Washington, that plaintiff—
* * * was admitted to the hospital on * * * 2/1/50, without any definite complaints. He stated that approximately 8 months ago while undergoing a routine physical examination an inguinal hernia was discovered on the right side. Examination at this hospital did not reveal evidence of a hernia, on either the right or left sides. Consequently the patient was discharged as fit for regular duty. No treatment was carried out.
Discharged: 2-3-50.
Diagnosis: No disease.
Prognosis: Excellent.
Recommendation: Fit for regular duty on 2/6/50. No further treatment indicated at this time.
Plaintiff had been admitted to the hospital on the authority of the Bureau of Employees’ Compensation for the purpose of having the hernia corrected by surgery. Hospital attendants made out the routine reports on medical history and findings and placed plaintiff on the usual regimen preliminary to surgery until the operation was cancelled.
The plaintiff did not inform the medical officers at the examination of any alleged previous ailments, but simply told them he was there for an operation. He stated that approximately three months earlier, while undergoing a routine physical examination, a inguinal hernia was discovered on the right side.
*47 By direction of the medical officer in charge at the hospital, notice was sent to the shipyard that plaintiff—
* * * was admitted 2-1-50, discharged 2-3-50.
Fit for duty.
Has been advised to report for work on February 6, 1950. _
_ He is considered fit for regular duty on February 6, 1950.
A copy of this notice was forwarded on February 6, 1950, to the Civil Service Eetirement Division by plaintiff’s attorney, with a request that it be considered in connection with plaintiff’s case.
25. By letter dated February 8,1950, the Civil Service Ee-tirement Division advised plaintiff’s attorney:
* * * the Commission has received no application for retirement filed by the * * * Shipyard for * * * [plaintiff]. When and if such application is received, Mr. LaEuffa will be afforded an opportunity to present any evidence he wishes * * *.
Your letters and enclosures are returned herewith. In the event that a claim is received in this office, you may then furnish this evidence.
26. By letter dated February 9,1950, the shipyard’s Fiscal Officer advised plaintiff:
Your application for Eetirement Disability * * * and all pertinent papers * * * have been forwarded to the * * * Civil Service * * * Eetirement Division, * * * this date for processing.
27. On February 13, 1950, plaintiff’s attorney again forwarded to the Civil Service Eetirement Division the letters and statements previously submitted, and requested consideration of them.
28. (a) On February 16, 1950, the Civil Service Eetirement Division forwarded to plaintiff the following notice:
Your application for annuity benefits under the provisions of the Civil Service Eetirement Act has been received.
This claim will be processed as soon as possible. You will be informed if additional information is desired.
(b) On February 21,1950, plaintiff’s attorney wrote to the Civil Service Eetirement Division:
*48 * * * under dates of January 18 and 23,1950,1 advised you that my client is opposed to being retired * * *. * * * under dates of January 25, February 6 and February 13,1950,1 forwarded * * * statements of physicians attesting to the physical fitness of Mr. LaRuffa * * *.
I therefore ask that you do not effect my client’s retirement from Federal employment.
29. On February 28, 1950, the Civil Service Retirement Division approved the application for retirement and, on the same day, the shipyard effected plaintiff’s separation from employment.
30. On March 14,1950, the Civil Service Retirement Division wrote to plaintiff’s attorney:
* * * Mr. LaRuffa was examined by a Federal Medical Officer and found totally disabled. Since he signed his own application and was found totally disabled, as claimed by him, this office has no alternative but to consider him as an annuitant. * * *
31. On March 14,1950, the Regional Director, Second Civil Service Region, wrote plaintiff:
* * * On February 27, 1950, you advised this office that the * * * Shipyard was continuing to carry you in a leave-without-pay status. Upon receipt of this information, it became our responsibility under Section 14 of the Veterans’ Preference Act of 1944 to determine whether you were or were not, in fact, physically qualified for continued duty as a Painter and, ordinarily, this office would have proceeded with the investigation necessary to make such a determination. In your case, however, it was found that the request for your disability retirement * * * had been approved effective February 28, 1950, and the * * * Shipyard effected your separation the same date.
In view of the decision of the Retirement Division * * * that you had been found totally disabled * * * it does not appear that there is any action which might be taken by this office on your appeal * * *. It is therefore the decision of this office that no change be made in the action of the * * * Shipyard * * * in separating you from your position * * *.
If you are dissatisfied with the determination of this office * * * you may * * * appeal to the * * * Civil Service Commission * * * within seven * * * days * * *.
*49 32. (a) After approval of plaintiff’s retirement by the Civil Service Retirement Division and the approval of plaintiff’s separation by the Civil Service Second Region, the plaintiff’s attorney further protested the retirement to the Civil Service Board of Appeals and Review.
(b) On April 22,1950, plaintiff was given a supplemental physical examination at the United States Marine Hospital. In said examination plaintiff did not advise the medical officers of any alleged previous physical difficulties in respect to asthma or in respect to his foot or left leg. He advised the doctors that he felt “good”. He did not advise the doctors that one leg had ever been sore or painful.
(c) On June 14,1950, the Chairman, Board of Appeals and Review, Civil Service Commission, wrote to plaintiff’s attorney:
* * * The report of the supplemental examination accorded Mr. LaRuffa at the * * * Marine Hospital on April 22, 1950, has been forwarded to * * * this office. As this report indicates that he is physically qualified for continuation as Painter the application for his disability retirement has been disallowed, and the * * * shipyard is being so notified.
33. On July 18,1950, the Chief of the Civil Service Retirement Division wrote to the shipyard’s Accounting Officer:
* * * On July 5, 1950, Mr. LaRuffa was advised that the effect of our action is as though an application had never been filed and, consequently, he must return to the retirement fund the total amount paid to him.
If your office concurs in our finding that he was erroneously separated for disability retirement, his name should be restored to the roll retroactive to the date of his retirement.
34. On July 31,1950, plaintiff was given a physical examination “for reevaluation” by a physician at the shipyard. The examining physician was not the medical officer who made the examinations in December 1949. In the report of his findings the physician stated:
* * * No hernias found. * * *
Shortening of left leg of about %" * * *.
* * * There is a slight limp, favoring left lower extremity, but function is good. Full range of motion.
*50 * * * Lungs: Clear * * * no wheezes or abnormal sounds. * * *
35. On August 1,1950, plaintiff was restored to his position at the shipyard.
36. On September 8,1950, the Commander of the shipyard wrote to plaintiff’s attorney:
* * * Relative to your request that Mr. LaRuffa be reimbursed for the period during which he was in a non-work status, you are advised that Public Law 623, 80th Congress, is the only authority under which such reimbursement may be made. However, this statute specifically applies only to improper removals or suspension. inasmuch as Mr. LaRuffa was found unfit for employment at the time of his examination by the Medical Officer on 7 December 1949, and subsequently voluntarily requested retirement for disability, there is no basis to construe his separation as improper.
Accordingly, it is considered that no authority exists by which this activity could reimburse Mr. LaRuffa for earnings lost prior to his reinstatement. * * *
37. (a) On September 14, 1950, plaintiff’s attorney wrote to the Civil Service Retirement Division:
* * * The shipyard states that it has no authority to order payment to Mr. LaRuffa because his removal is not considered improper, and that the Civil Service Commission has not recommended reimbursement.
Can it be that both the Commission and the shipyard feel each should refer the matter to the other in order to delay, impede, or altogether avoid favorable action? * * *
(b) On October 16, 1950, the Chief of the Civil Service Retirement Division replied:
* * * This office effected the only action possible under the Retirement Act; that is, notified the Department that this employee’s separation was in error and should be rescinded.
* * * It is * * * entirely within the jurisdiction of the Navy Department to determine whether any back pay is allowable in this case. Should the Department be undecided, it may submit the matter to the Comptroller General.
38. (a) On October 18, 1950, plaintiff’s attorney again wrote to the shipyard.
*51 (b)On October 81,1950, the Commander of tbe shipyard replied:
* * * Mr. LaEuffa was declared physically unfit to perform the duties of his rating in December 1949, but he eventually regained his health to a sufficient degree to pass the physical examination * * *.
* * * No doubt exists in my mind as to the propriety of the action taken, and inasmuch as no legal authority is known by which Mr. LaEuffa may be compensated for the period he was not on our rolls, I feel no useful purpose would be served by my submitting his case to the Comptroller General for decision. However, if he desires, Mr. LaEuffa may submit his claim to the General Accounting Office * * * for adjudication.
39. (a) Plaintiff (or his attorney) did submit his claim to the Comptroller General for adjudication.
(b) On March 9,1951, the Comptroller General denied it.
40. (a) Plaintiff’s last day of duty at the shipyard (prior to his restoration on August 1,1950) was December 7,1949.
(b) He was carried on annual and sick leave until January 24, 1950.
(c) He was separated from the service on February 28, 1950.
(d) At the time of his separation he was paid $70.09 for 43 hours of accrued annual leave.
(e) Plaintiff’s earnings during the period January 24, 1950, to August 1, 1950, amounted to $557.00.
(f) Plaintiff’s wages during the same period would have amounted to $1,755.51.[7]
(g) Plaintiff’s loss of earnings during the same period amounted to $1,128.42.[8]
41. When plaintiff reported to the dispensary for a physical examination on December 7, 1949, he knew (1) that his period of limited duty was coming to an end and (2) that his claim for industrial (employees’) compensation for hernia had been denied subject to a more convincing showing by him. He had tolerated very well the work of painting flags, and had also been content with the work on limited duty. Between his desire to continue in work he found *52 pleasant and what he believed to be an opportunity to obtain compensation for a shop injury, he “overspoke himself” in his statement of aches and pains. To this extent plaintiff contributed to the situation in which he later found himself.
42. Plaintiff did not seek retirement for disability. It is not established by the evidence that there was any conscious effort to mislead him into signing the application for retirement. Nevertheless, in signing the application plaintiff thought he was continuing his effort to obtain compensation for a shop injury. The nature and purpose of the document was not made clear to him at the time he signed it, and just as soon as he learned of what he had done he asked that the application be withdrawn. The shipyard refused. The request for withdrawal was made within a week after the application was signed. More than eight weeks elapsed after the signing of the application before the shipyard forwarded it to the Retirement Division of Civil Service.
43. The shipyard could have initiated proceedings for the separation of plaintiff because of disability, with or without retirement benefits (leaving it to plaintiff to initiate the request for retirement), and with or without plaintiff’s consent. If proceedings had been initiated by the shipyard to separate plaintiff because of disability and without his consent, plaintiff would have been entitled to protest the action within the shipyard, and to appeal (if his protest was overruled) to the Second Civil Service Region, and from there to the Board of Appeals and Review of the Civil Service Commission, and from the Board to the Commission.
44. Plaintiff was separated from his position on the basis of an application which the shipyard and the Retirement Division of Civil Service treated as a voluntary action on his part.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.

 Ch. 287, 58 Stat. 387, 390, as amended 5 TJ. S. C., § 863 (1952).

 Act of June 10, 1948, eh. 447, 62 Stat. 354, 5 U. S. C., § 652 (1952), amending section 6 of the Lloyd-LaEollette Act of August 24, 1912, ch. 389, § 6, 37 Stat. 555.

 Plaintiff is a man of slight build. His height is 5 feet 3 inches. In 1918, his weight was 98 pounds. He testified that his release from the Army was because of his legs, “paralysis, something like that.” Of. Finding 9.

 Hereinafter referred to as the shipyard.

 5 U. S. C. 710.

 During tlie interview between the medical officer and plaintiff and plaintiff’s uncle, the uncle threatened to go to the “Admiral” (Commander of the shipyard) if the medical officer did not arrive at the right answers. In later reports the medical officer stated that neither the attitude nor the statements of the uncle had affected his decision.

 The Retirement Division of the Civil Service Commission was and is located in Washington. The appeal, mentioned by the shipyard Commander in the letter quoted in finding 20, was said to lie to the Second Civil Service Region, with offices in New Xorh.

 The statement of plaintiff’s right to appeal is not in evidence.

 Computed on the basis of 1,077 Fours at $1.63 per hour.

 Computed as follows: $1,755.51-($557+$70.09) =$1,128.42.